## AS TO THE UNIONIZING OF SCHOOL DISTRICTS.

Common Pleas Court of Athens County.

THE COUNTY BOARD OF EDUCATION OF ATHENS COUNTY v. BERT M. THOMPSON.

Decided, April, 1925.

*Union of School Districts—No Present Authority for Making New Union of Districts by Village and Rural Boards of Education—Conflict of Authority between County Superintendents and Village and Rural Superintendents—First Sentence of Section 4740 General Code Void.*

1. The first sentence of Section 4740, General Code is inoperative and void.

2. There has not been since 1914 and there is not now any law authorizing two or more boards of education of village and rural school districts to unite their districts for supervision purposes.

3. The union of school districts for supervision purposes mentioned in 4740 has reference only to such unions as were created prior to the enactment of the school code of 1914.

4. All village. wholly centralized rural, and union of school districts for supervision purposes are now and have been under the jurisdiction of the county superintendent since the enactment of the school code of 1914.

5. Since the enactment of the school code of 1914, no territory can be transferred from one district to another within the county, nor one whole district combined with another nor united for supervision purposes, or any other purpose except for high school purposes, unless the same be done under the authority or with the consent of the county board of education.

6. Any village or wholly centralized rural school district or union of school districts for high school purposes which maintains a first grade high school and which employs a superintendent as provided in Section 4740, and has been doing so since and prior to the enactment of the school cole of 1914, may continue to employ a superintendent of schools so long as such board of education complies with Section 4740 in the matter of such election.

7. A superintendent elected under the provisions of 4740, in his relation to the county board of education and county superintendent is in fact an assistant county superintendent, part time teacher and an agent of the local board to perform such duties

as the local board may provide, which duties must not conflict with the duties of the county superintendent and his assistants.

8. Village and rural school superintendents elected under Section 7690 may not operate as such superintendents until their duties are prescribed by proper rules and regulations by the boards of education of the respective districts and these duties must not conflict with the duties of the county superintendent and his assistants.

*Messrs. Woolley & Rowland,* for plaintiff.
*Messrs. Wood & Williams,* for defendant.

WORSTELL, J.

This cause is one for injunction and was submitted to the court on the pleadings and an agreed statement of facts.

Athens county is one of the counties of Ohio and, excepting the cities and exempted villages therein, constitutes a county school district. Dover township is one of the townships of Athens county and, excepting the village of Chauncey, constitutes a rural school district. Chauncey village is an incorporated village with fewer than three thousand inhabitants and is located wholly within the territorial limits of said Dover township and constitutes a village school district.

Said county school district, said rural school district, and said village school district each have a board of education. Said rural school district and said village school district are united for high school purposes under the provisions of Section 7669 of the General Code, and maintain a first grade high school.

From the year 1913 to March 18, 1922, said Dover township rural school district and said Chauncey village school district appointed the same person as superintendent of schools of said two districts. From March 18, 1922, until May 21, 1924, the boards of education of said two districts did not appoint or employ a superintendent jointly nor did either appoint or employ a superintendent for its respective district, but by resolution passed in a joint meeting of the boards of education of said districts, requested the county superintendent to have an assistant county superintendent

help in the supervision of the schools in said district, or joint district, which was done.

On the 21st day of May, 1924, the board of education of said village district passed the following motions, to-wit:

"a. That we ask exemption under Section 4740, on the approval of the state."

"b. Mr. Blackford nominates Professor Thompson for superintendent 'of said district, seconded by Palmer and that we recommend a salary of twenty-five hundred dollars per year, on approval of the state."

On the same day the board of education of said rural school district passed the following motions, to-wit:

"Resolution by Fisk that Dover township rural board of education of Athens county, Ohio, does hereby deem it necessary as well as advisable for the best interests of our schools to create a school district with the Chauncey village board of education, in conformity to Section 4740 General Code, and to petition or make application according to the provisions of said Section 4740 General Code to the county board of education of Athens county, Ohio, to recognize said district as such."

On the same day a joint meeting of the boards of education of said rural and village districts passed the following motions:

"a. That we ask exemption from the county under Section 4740 of the Ohio school laws with approval of the state department."

"b. That we hire Professor Thompson as superintendent for the said 4740 district and recommend a salary of twenty-five hundred dollars per year, upon the state's approval."

"c. That the term of said election of superintendent be for a period of one year."

The Professor Thompson referred to in the above motions and resolutions is the defendant in this action, Bert M. Thompson. Since the beginning of the school year of 1924-25 until the bringing of this action, the defendant assumed to act as superintendent of the Chauncey village schools and the

Dover township rural schools, including the joint high school in which he taught part time, and one of the regularly appointed assistant county superintendents has been assigned to supervise said schools for said year of 1924-25 and he is performing his duties in such respect.

From the foregoing agreed statement of facts the court concludes that neither said village board nor said township board attempted to elect Mr. Thompson superintendent of schools of their respective districts, but they did intend to form a joint district composed of said two districts and to elect him superintendent of said joint district.

This action is brought by the county board of education to enjoin Mr. Thompson from acting as superintendent of the schools of said village district and said rural district and said proposed joint district.

The boards of education of said two districts assumed to act under the provisions of G. C. 4740 to unite their districts into a union district for supervision purposes and to elect Mr. Thompson superintendent of the schools of said union district. Said section is as follows:

"Any village or wholly centralized rural school district or union of school districts for high school purposes which maintains a first grade high school and which employs a superintendent, upon the nomination of a county superintendent, shall upon application to the county board of education before June first of any year be placed under the supervision of the county superintendent. Such superistendent shall be employed by the local boards of education upon the nomination of the county superintendent, but the local board of education by majority vote of its full membership may employ a superintendent not so nominated. Such superintendent shall perform the duties prescribed by law for assistant county superintendents, but shall teach such part of the day as the board of education of the district or districts may direct." 109 Ohio Laws, 243.

This section recognizes the existence of a union of school districts for high school purposes which maintain a first grade high school and which employs a superintendent; but,

it does not provide for the creation of such a union of districts, and we find no existing law by which two or more districts may unite for supervision purposes. It will be necessary therefor, to look into the history of school legislation to ascertain how such existing union of districts for supervision purposes came into existence.

As a part of an act passed April 25, 1904, found in Ohio Laws 97 on pages 362-3, is Section 4017-a R. S., is the following:

"The board of education of each village, township and special school district may appoint a suitable person to act as superintendent, and to employ the teachers of the public schools of the district, * * * but nothing herein shall be construed as preventing two or more districts uniting and appointing the same person as superintendent * * *."

That part of this section was never amended. It was carried into the General Code as Section 7705, and it was repealed in February, 1914, in 104 Ohio Laws, 145, upon the enactment of the first law providing for county supervision of schools. Since that time there has been no law authorizing the boards of education of two or more districts to unite their districts for supervision purposes, nor has there been any law authorizing two or more boards of education to employ the same person as a school superintendent for their districts.

In this first supervision act is found Section 4740 G. C., in 104 Ohio Laws on page 141. That part of said section which is of interest in this case is as follows:

"Any village or rural school district or union of school districts for supervision purposes which already employs a superintendent and which officially certifies by the clerk or clerks of the boards of education on or before July 20, 1914, that it will employ a superintendent who gives at least one half his time in supervision shall upon application to the county board of education be continued as a separate supervision district so long as the superintendent receives a salary of at least one thousand dollars, and continues to give one half of his time to supervision work * * *. The county superintendent shall make no nomination of a district

superintendent in such district until a vacancy in such superintendency occurs. After the first vacancy occurs in the superintendency of such district the appointment shall be made on the nomination of the county superintendent in the manner provided in Section 4739. A vacancy shall occur only when such superintendent resigns, dies, or fails of re-election.''

The effect of this section was to carry forward into the plan of county school supervision, as district supervision units, those districts and union of districts which had previously taken such interest in their schools as to provide supervision when the same had not been required and had continued to do so up to the date of this enactment.

The conditions on which such a district or union of districts as existed at the time of such enactment should be carried forward into the county plan are as follows:

First: That such district or union of districts had *already* been employing a superintendent.

Second: That the clerk or clerks of such district or union of districts should certify to the county board of education that it will in the future continue to employ a superintendent who was to give at least one half his time to supervision.

Third: That having complied with conditions one and two said district or union of districts should continue as separate supervision districts so long as it had a superintendent and paid him a thousand dollars per year and he gave one half of his time to supervision.

In a union district composed of three or fewer school districts, the superintendent of schools was elected at a joint meeting of the boards of education of the several districts composing such union, as provided for election of district superintendents under G. C. 4739 as it then existed. 104 O. L., 140.

This Section 4739 has been repealed and the election of a superintendent of schools in a union district is now provided for in the present Section 4740 G. C.

This original Section 4740 further protected such districts

and union of districts by withholding from the county super-intendent the right to nominate a superintendent of such dis-trict or union of districs as was given to the county superin-tendent in other cases, except that the county superintendent should nominate in case a superintendent of such district or union of district dies, resigns or fails of re-election.

This section, however, was amended May 27, 1915. See Volume 106, Ohio Laws, page 398. That part of such amend-ed section as is applicable herein is as follows:

"Any village or rural district or union of school districts for high school purposes which maintains a first grade high school and which employs a principal, shall upon application to the county board of education before June first of any year be continued as a separate district under the direct supervision of the county superintendent. Such district shall continue to be under the direct supervision of the county superintendent, until the board of education of such district by resolution shall petition to become a part of a supervision district of the county school district. Such principal shall perform all the duties prescribed by law for a district super-intendent, but shall teach such part of each day as the board of education of the district or districts may direct. Such districts shall receive no state aid for the payment of salaries of their principals and the salary shall be paid by the boards employing such principals." Original Section 4740 was repealed.

It is apparent from this first act of May 1915 that the Legislature intended to abolish all those former self-consti-tuted supervision districts unless such district or union of districts maintain a first grade high school and employed a principal, and it provided that such supervision districts as already maintained a first grade high school and employed a principal could terminate their own existence as a separate supervision unit by petition the county board of education to become a part of a supervision district of the county district, and when that was done the principal of the high school should be under the supervision of the superintendent of the supervision district.

The same day that Section 4740 above referred to as

passed on May 27, 1915, the Legislature also passed another Section (4740) found in 106 O. L., 439. The first above Section (4740) was filed with the Secretary of State May 28, 1915, and the second was filed with the Secretary of State June 4, 1925. That part of this second Section (4740) which is applicable here is as follows:

"Any village or rural school district or union of school districts for high school purposes which maintains a first grade high school and which employs a superintendent shall upon application to the county board of education before September 15, 1915, or before June first of any year thereafter be continued as a separate district under the supervision of the county superintendent. Such district shall continue to be under the direct supervision of the county superintendent until the board of education of such district by a resolution shall petition to become part of a supervision district of the county school district. Such superintendent shall perform the duties prescribed by law for a district superintendent, but shall teach such part of each day as the board of education of the district or districts may direct. Such districts shall receive no state aid for the payment of the salaries of their respective superintendents and salaries shall be paid by the boards employing such superintendents." Original Section 4740 repealed.

It is apparent that this second Section (4740) passed May 27, 1915, was enacted to protect those village, rural and union districts which had been employing a superintendent and which maintained a first grade high school, even though they did not employ a principal, from being annexed to other territory and made to constitute a part of another supervision district. The Legislature evidently wanted to give such boards of education the right to continue the then existing status.

Section 4740 was again amended March 21, 1919. 107 Ohio Laws, 622. That part of such section as is applicable here is as follows:

"Any village or wholly centralized rural school district or union of school districts for high school purposes which maintains a first grade high school and which maintains a

superintendent, shall upon application to the county board of education before June first of any year be continued as a separate district under the direct supervision of the county superintendent, until the board of education of such district by resolution shall petition to become a part of a supervision district of the county school district. Such superintendent shall perform all the duties prescribed by law for a district superintendent but shall teach such part of each day as the board of education of the district or districts may direct.''

This act limits those districts which should continue as separate supervision districts without change of territory by the county board, to village, wholly centralized rural, and union of school districts for high school purposes, which maintain a first grade high school and which employ a super-- intendent. This act terminated the right of rural districts to continue as a supervision district unless it were a wholly centralized district.

This section was again amended April 29, 1921, in 109 Ohio Laws, 243, into its present form. That part of such revised section as is applicable here is as follows:

''Any village or wholly centralized rural school district or union of school districts for high school purposes which maintains a first grade high school and which employs a superintendent upon the nomination of the county superintendent shall upon application to the county board of education, before June first of any year, be placed under the supervision of the county superintendent. Such superintendent shall be employed by the local boards of education upon the nomination of the county superintendent, but the local board of education, by majority vote of its full membership, may employ a superintendent not so nominated. Such superintendent shall perform the duties prescribed by law for assistant county superintendents, but shall teach for such part of the day as the board of education of the district or districts may direct.''

This Section 4740 as originally enacted in 104 Ohio Laws 41 made provision for the continuance of such districts and union of districts only as *already* employed a superintendent. The words *''be continued''* and *''already''* as used in that

law clearly implies the then and prior existence of such districts and union of districts.

When the section was amended in 106 Ohio Laws, 398, the word "already" was dropped, but provision was made again for the continuance of such districts and the union of districts as employed a superintendent. The expression "shall be continued" implies present existence. That expression is carried down through all the amendments of this section until it was amended in its present form in 109 Ohio Laws, 243.

We come now to consider Section 4740 as it now stands, and as quoted above. The first sentence of that section is as follows: "Any village or wholly centralized rural school district or union of school districts for high school purposes which maintains a first grade high school and which employs a superintendent upon the nomination of the county superintendent shall upon application to the county board of education before June first of any year be placed under the supervision of the county superintendent." This sentence implies that such districts are not under the supervision of the county superintendent, but may become so by complying with the terms of such sentence. This section in all its previous forms implies that such districts were under the supervision of the county superintendent. A review of some of the other school laws clearly indicate the same thing.

The law defining the duties and jurisdiction of the county superintendent is as follows:

G. C. 4679. "The school districts of the state shall be styled, respectively, city school districts, exempted village school districts, village school districts, rural school districts, and county school districts." 109 O. L., 552.

G. C. 4728. "Each county school district shall be under the supervision and control of a county board of education composed of five members * * * ." 109 O. L., 242.

G. C. 4744. "The county board of education * * * shall appoint a county superintendent * * * . He shall be in all respects the executive officer of the county board of education * * * ." 104 Ohio Laws, 142.

G. C. 4739. "One or more assistant county superintend-

ents * * * may be elected * * * in each county school district by the county board of education * * , * .''

G. C. 7706. "The county superintendent and each assistant county superintendent shall visit the school in the county school district, direct and assist teachers in the performance of their duties, and classify and control the promotion of pupils * * * ." 109 Ohio Laws, 244.

G. C. 7706. "The county superintendent shall, as often as advisable, assemble the teachers, assistant county superintendents and the superintendents · * * * provided for under Section 4740 of the county school district for the purpose of conference on the course of study, discipline, school management and other school work and for the promotion of the general good of all schools of the county school district." 109 Ohio Laws, 244.

G. C. 7706-3. "The county superintendent shall hold monthly meetings with the assistant county superintendents and the superintendents, provided for under Section 4740, and advise with them on matters of school efficiency. He shall visit and inspect the schools under his supervision * * * ." 109 Ohio Laws, 592.

From the foregoing it is clear that the Legislative intent is that the school districts and union of districts mentioned in Section 4740 are now and have been under the jurisdiction of the county superintendent, and that the first sentence of said Section 4740 is inoperative and void and should be repealed.

The second sentence of Section 4740 provides for the election of a superintendent of a village, centralized rural or union of school districts for high school purposes, which maintains a first grade high school and which employs a superintendent. The other and last sentence of such section quoted above provides for the duties of such superintendent.

There is no law now and there has been no law since the repeal of Section 7705, in 1914 in 104 Ohio Laws, 145, by which two districts by the action of their respective boards or by the joint action of the boards of education of such districts may unite such districts for supervision purposes and there is no law now, and has been none since the enactment of the school code in 1914, by which territory may be

transferred from one district to another or by which a whole district may be transferred to another without the action or cooperation or consent of the county board of education. (See G. C. 4692, also 104 O. L. 135). An examination of the school code as passed in 1914 and the various changes in the same since that date, indicate that the intent of the Legislature has been generally to strengthen the county unit and to give more power to the county board of education at the expense of the local boards.

There were two bonds or ties uniting the Chauncey board of education with the Dover township board of education, the first being the election of the same person as a superintendent of the two districts or the joint district, and the second the creation of a joint high school. When these two boards of education failed to elect a superintendent for their so called union or joint district upon the resignation of their joint superintendent on March 18, 1922, the bond or tie uniting these two districts for supervision purposes was dissolved. There being no law at that time or since authorizing the forming or creation of a new union of districts for supervision purposes, the court holds that there is not now and has not been since March 18, 1922, a union or joint district composed of the Chauncey village district and the Dover township rural school district, and that the election or attempted election of Mr. Thompson as superintendent of such a union or joint district is null and void.

This condition, however, does not effect the union of such districts for high school purposes as such a union is provided for by G. C. 7669 in 109 Ohio Laws, 373.

A supplemental petition was filed in this case stating that said village board of education on December 21, 1924, had passed a resolution dissolving the union of said school districts for high school purposes, and further that said village board had elected Mr. Thompson superintendent of said village school district and that he was assuming to act as superintendent of such village schools under his said employment. The village board acted, no doubt, under the

authority of Section B. C. 7690, in making such election. The part of that section which is of interest here is as follows:

G. C. 7690. ''Every city, village or rural board of education shall have the management and control of all the public schools of whatever name or character in the district, except as provided in laws for county normal schools. It may elect to serve under the proper rules and regulations a superintendent or principle of schools or other employees, including, if deemed best, a superintendent of buildings and may fix their salaries * * *.'' 109 Ohio Laws, 377.

This bit of legislation has a long history.

Township and village school districts and township and village boards of education were provided for as early as the school code of May 1, 1873. 70 Ohio Laws, 195, *et seq.* See Section 1 on said page, Section 16 on page 198, and Section 26, page 201. In that act on page 209 is Section 52, a part of which is, as follows: ''The board of education of each school district shall have the management and control of the public schools of the district which are or may be established under authority of this act, with full power in respect to such schools to appoint a superintendent * * * and fix their salaries * * *.''

This law was not changed until after it become a part of Section 4017 of the revised statutes in 1880.

As Section 4017, it was amended April 28, 1890, in 87 O. L., 372, and March 15, 1892 in 89 O. L. 96, and March 21, 1892, and in 89 O. L. 202, and April 4, 1884 in 91 O. L. 113, and May 21, 1894 in 91 O. L. 422, and March 11, 1898 in 93 O. L. 48, and April 25, 1904, in 97 O. L. 360, at which last time it was incorporated as a part of a new school code. This section was not again amended until it was carried into the general code as Section 7690 when it was amended March 7, 1917, in 107 Ohio Laws, 47, and again April 29, 1921, in 109 Ohio Laws, 377, when it appears as above quoted.

This section as variously amended always granted power to township school districts, as long as they were so named, and later to rural school districts, and village school districts

the right to elect a superintendent of the schools of their respective districts.

The duties and authority of village school superintendents under this law were not limited until its final amendment in 1921 when it appears as above quoted.

The expression "to serve under proper rules and regulations" is not found in any of the prior forms of the statute.

As shown before, the village and rural schools are under the jurisdiction of the county board of education and under the supervision of the county superintendent and his assistants. In order that there may be no conflict of authority between the county school superintendent and his assistants on the one part, and the village and rural district superintendents on the other, the Legislature has limited the operations of such village and rural district superintendents. These latter shall not have general powers as school superintendents, but they shall serve only under proper rules and regulations. These rules and regulations must be provided by the boards of education of such village and rural districts for school superintendents for their respective schools. These rules and regulations must restrict such duties to those that will not conflict with the duties of the county superintendent and his assistants. Such village and rural school superintendents who may be elected under Section 7690 may not serve at all until the rules and regulations governing their services have been provided. Such districts and their superintendents occupy a relation to the county districts and the county superintendent and his assistants somewhat like the relation of a state to the United States. A state cannot operate until it has provided itself with a constitution and officers, but such constitution must not conflict with the constitution of the United States and the duties of such state officers must not conflict with the duties of the national officers.

The injunction is allowed as prayed for, except that the defendant may serve as superintendent of schools of said village district after proper rules and regulations governing his duties as such superintendent have been adopted by the village board of education.